# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jonathan Spaeth, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (816) 433-2203, subscribed to by an unknown subscriber (the "Target Cell Phone"), whose service provider is T-Mobile US, a wireless telephone service provider headquartered at 12920 Southeast 38th Street, Bellevue, Washington. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been for the past 14 years. I was previously assigned to the FBI's Loredo, Texas Resident Agency Office. For the last 8 years I have been assigned to the FBI's Kansas City Field Office. For the last 8 years I have been assigned to investigate violent crime matters to include bank robberies, Hobbs Act robberies, and kidnappings. Prior to the FBI, I was a Springfield Missouri Police Officer and Detective for 10 years.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. The FBI is attempting to discover the location of Mequale Austin (hereinafter Austin), who is a necessary and material witness for the government. It is believed that Austin is using the Target Telephone, a cellular telephone issued by T-Mobile US and subscribed to by an unknown subscriber. Investigators have attempted to make contact with Austin over the Target Cell Phone.

## JURISDICTION

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. The United States, including the FBI, is conducting a criminal investigation of Mequale Austin regarding possible violations of 18 U.S.C. § 3144, release or detention of a material witness.

8. On June 27, 2021, at approximately 5:18 p.m., Officer Allen and Officer Kyle of the Kansas City, Missouri Police Department ("KCPD") were dispatched to Family Dollar at 7600 East 87th Street, Kansas City, Jackson County, Missouri, following a report of an armed robbery. Upon arriving, Officer Allen made contact with the employee victim, Mequale Austin. Austin reported that the suspect entered the store armed with a brown handgun, which the suspect pointed

at Austin and demanded money. Austin stated that the suspect came around the cashier counter and took United States currency from the store safe. The suspect then took Austin's iPhone and fled the store on foot. Officers reviewed surveillance video from the store and noted that it depicted events consistent with Austin's statement.

9. On August 19, 2021, Robert TAYLOR was interviewed following his arrest after being read the *Miranda* warning. During the interview, TAYLOR admitted to committing a robbery of a Family Dollar on August 11, 2021. TAYLOR also conceded that he was responsible for six other armed robberies that occurred throughout the Kansas City metropolitan area between December 8, 2020, to August 11, 2021, including the robbery of Family Dollar on June 27, 2021, as witnessed by Austin.

10. On October 5, 2021, a federal grand jury seated in Kansas City, Missouri, returned an indictment charging TAYLOR with seven counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); and seven counts of using, carrying, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). A jury trial on these charges commenced on February 6, 2023.

11. On January 31, 2023, Task Force Officer ("TFO") Brian Tomanio of the Federal Bureau of Investigation ("FBI") personally served Austin with a subpoena to testify in TAYLOR's trial commencing on February 6, 2023, at 9:00 a.m., in Courtroom 7B of the Charles E. Whittaker Courthouse at 400 East Ninth Street, Kansas City, Missouri, before the Honorable Stephen R. Bough, Judge of United States District Court, Western District of Missouri. Austin was advised of the trial and directed to contact Assistant United States Attorney ("AUSA") Byron Black, which she promptly did. A trial preparation meeting was scheduled for February 1, 2023, at 9:30 a.m., which Austin failed to attend.

12. After Austin failed to attend the trial preparation meeting on February 1, 2023, at 9:30 a.m., investigators with the FBI attempted to contact Austin at the Target Cell Phone no less than ten times. Investigators have also attempted to physically locate Austin at multiple addresses since the failed attendance at the trial preparation meeting, with negative results.

13. On February 6, 2023, at 9:00 a.m., Austin was not present at Courtroom 7B in the United States District Court for the Western District of Missouri at 400 East Ninth Street, Kansas City, Missouri, as commanded by the subpoena she was personally served with on January 31, 2023. A material witness warrant was subsequently issued for Austin's arrest pursuant to 18 U.S.C. § 3144 and remains outstanding.

14. In my training and experience, I have learned that T-Mobile US is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call

made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

15. Based on my training and experience, I know that T-Mobile US can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US's network or with such other reference points as may be reasonably available.

16. Based on my training and experience, I know that T-Mobile US can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile US typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target

Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

19. I further request that the Court direct T-Mobile US to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile US. I also request that the Court direct T-Mobile US to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile US's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile US's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The FBI shall compensate T-Mobile US for reasonable expenses incurred in furnishing such facilities or assistance.

20. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

21. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the

targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Jonathan E. Spaeth
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me via reliable electronic means on \_\_6th\_\_ day of February 2023.
at 5:14 p.m.

_____
HONORABLE JILL A. MORRIS
United States Magistrate Judge
Western District of Missouri